## APPEAL OF WILLIAM NEAL ET AL.

[NEAL ET AL. v. LEWISBURG NAIL WORKS ET AL.]

FROM THE DECREE OF THE COURT OF · COMMON PLEAS OF UNION COUNTY, IN EQUITY.

Argued October 11, 1889*—Decided October 28, 1889.

Where the judgment bond of a corporation is given to certain of its directors, as a security to protect them on their indorsements for the company, and it is not made to appear that the company was insolvent at the time,

---

* This case and that following were argued by advancement at the October Term.

Opinion of Court below.

or that at the time there was any collusion or actual fraudulent intent, the entry of judgment on the bond, after the insolvency of the company, will not warrant an injunction to restrain the sale or attachment of corporate property upon an execution issued thereon.

Before Paxson, C. J., Sterrett, Clark, Williams, Mc-Collum and Mitchell, JJ.

No. 73 July Term 1889, Sup. Ct.; court below, No. 1 May Term 1889, C. P. in Equity.

On March 20, 1889, William Neal, Clinton W. Neal and Robert C. Neal, trading as William Neal & Sons, and Perry Dean, agent, in behalf of themselves and others, creditors of the Lewisburg Nail Works, filed a bill in equity against the Lewisburg Nail Works and John Klingler, sheriff of Union county, Truman H. Purdy, William D. Himmelreich, Jonathan Wolfe, Thomas H. Croft, John F. Duncan, F. C. Harrison, William M. Ginter, Wm. Croft, Weidler Roland, the Central Manufacturing Co., Buffalo Milling Co., Limited, and Lewisburg National Bank, praying, upon the facts averred, that inter alia the defendants be enjoined from proceeding to sell the property of the Lewisburg Nail Works upon executions issued upon certain judgments entered by confession against the said company. On the reading of the bill and affidavits, a preliminary injunction was awarded as prayed for, and on the same day a rule on the defendants was granted to show cause why the injunction should not be continued.

On April 4, 1889, the return day of the rule, there was a motion filed on behalf of the defendants that the preliminary injunction be dissolved, and answers and affidavits on behalf of the Central Manufacturing Co. and other defendants were filed, read, and argument had.

On April 17, 1889, the court, Rockefeller, P. J., filed the following opinion, from which the facts fully appear:

The Lewisburg Nail Works is a corporation by virtue of an application to the governor, and letters patent issued in accordance with the provisions of § 2, of the act entitled "An act to provide for the incorporation and regulation of certain corporations," approved April 29, 1874, P. L. 73. The corporation was formed "for the purpose of manufacturing and preparing

iron and the manufacture of nails, and articles incident thereto, and selling and marketing the same," the business to be transacted in East Buffalo township, and the borough of Lewisburg, Union county, Pa. The capital stock was $15,000, divided into 150 shares of the par value of $100, which capital stock was afterwards increased to $30,000.

The certificate of incorporation was approved by the governor, and letters patent directed to be issued March 31, 1884, but the certificate, with all of its indorsements, was not recorded in the office for recording of deeds, in and for the county of Union, until May 21, 1888. In the mean time, the company erected a nail mill, kept a general store, manufactured nails and skelp-iron and sold the same. It is plain, that to a considerable extent its business and operations were carried on with borrowed money, for on December 2, 1887, it owed the Lewisburg National Bank $8,000; [indebtedness of the company recited], amounting together to the sum of $52,605.62, besides, as alleged, other indebtedness. Prior to January 28, 1888, Truman H. Purdy, John F. Duncan, Wm. D. Himmelreich, Jonathan Wolfe and Thomas Croft had indorsed notes, payable at the Lewisburg National Bank and the Union National Bank, of Lewisburg, for the accommodation of the corporation, the Lewisburg Nail Works, to the amount of $22,000, and on that day a resolution was passed by its board of directors, authorizing the execution of a judgment bond in favor of said indorsers, to secure and indemnify them against loss by reason of their said indorsements, to the extent of $20,000, which resolution was ratified at a stockholders' meeting on January 30, 1888.

This resolution was in consideration that the said parties should continue their said indorsements. A bond with warrant of attorney to confess judgment, dated January 28, 1888, was duly executed and delivered, and the indorsements continued and renewed from time to time thereafter, and the parties continue liable thereon. The bond expressly covers both indorsements and renewals thereof. No judgment was entered upon said bond until March 11, 1889. On that day, the company being also indebted to the banks of Lewisburg in an additional sum of $12,000 on notes indorsed for its accommodation by F. C. Harrison, Wm. M. Ginter, William Croft, Weidler Roland, T. H. Croft, J. F. Duncan, Wm. D. Himmelreich,

Jonathan Wolfe and T. H. Purdy, the board of directors pass-
ed a resolution authorizing and directing the president to exe-
cute, and deliver to said indorsers another judgment bond of
that date, to secure them for and against their and each of
their indorsements as treasurer or otherwise, in any of said
banks, to be applied proportionately to the amount of each of
their indorsements, and to secure the same.

The board of directors and officers, at the same time con-
fessed two other judgments, in favor of the Central Manufac-
turing Company and the Buffalo Milling Company, respectively,
in which companies, it is alleged, they are stockholders. On
the same day, to wit: March 11, 1889, judgments were entered
upon the said judgment bonds in favor of said indorsers, writs
of fieri facias issued, and levies. made upon all the personal
property of the company, not essential to the exercise of its
corporate franchises.

A writ of attachment was also issued to attach sundry debts
due the company by different individuals, and a testatum fieri
facias issued to Berks county, upon which a levy was made
upon a lot of iron. It is not denied, that on March 28, 1888,
Thomas H. Croft, Truman H. Purdy, Wm. D. Himmelreich,
J. F. Duncan, S. D. Bates, L. B. Wolfe, William Croft, Mich-
ael Scully, Jonathan Wolfe, Weidler Roland, E. M. Purdy,
Lemuel Shipman and John Evans were directors and officers
of the corporation. The parties to whom the said judgment
bond, dated March 11, 1889, was given, were also at that time
officers and directors of the company.

The bill is filed by the plaintiffs, who are general creditors
of the said corporation, the Lewisburg Nail Works, alleging,
amongst other things, that the said corporation is insolvent,
and that this was known to its officers and directors at the time
of the execution of the said judgment bonds in their favor, and
that they intend selling the personal property of the corporation,
and purchasing the same without substantial competition at
the sheriff's sale thereof, etc., all of which they contend is a
fraud upon them, especially after the said corporation procured
the renewal of one of the notes of Wm. Neal & Sons, in order,
as they allege, to prevent them from participating in the sale,
and thereby to defraud them and the other creditors of the cor-
poration, not of record, in the collection of their debts. The

prayer of the bill, amongst other things, is, that the said plaintiffs in the said judgments be enjoined from proceeding by execution or otherwise, upon their said several judgments, and from doing or assisting in any act or thing by which the property or assets of the corporation shall be sold or transferred, or the proceeds thereof applied to their said judgments, or either of them, in exclusion of and to the preference over the lawful demands of the other creditors of the corporation, and that a receiver be appointed, etc.

It may be stated as a well settled principle in the law of Pennsylvania, that the confession of a judgment to a bona fide creditor, even though it have the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate: Siegel v. Chidsey, 28 Pa. 279. In the case of Uhler v. Maulfair, 23 Pa. 484, LEWIS, J., said: "The principle is now too well settled to require further authority or argument, that so long as a debtor retains dominion over his property, he may prefer one creditor to another, and that such a preference is not fraudulent, either in law or in fact." It is also well settled that a judgment may be given to indemnify one for damages he may sustain by reason of his becoming surety for another, and in the case of McCann v. Farley, 26 Pa. 173, it was held that "on a judgment entered upon a bond and warrant of attorney for a stated sum, given as indemnity to the plaintiff, execution may issue without a scire facias, suggestion or other proceedings to ascertain the damages." The authorities, foreign, national and state, show clearly that in regard to the transfer, mortgaging or incumbering of property, with a view to prefer one creditor to another, the law is the same with respect to corporations as individuals. I need not take the time to refer to the numerous authorities of other states cited at the argument on this question. It is sufficient to say that ever since the case of Dana v. Bank of the U. S., 5 W. & S. 223, I do not know that this has been questioned in Pennsylvania. I am of opinion that the principal question, in the present case, is as to whether an insolvent corporation, being indebted to its officers, such officers can give judgments in their own favor, issue executions and thereby obtain a preference over general creditors in the distribution of the proceeds.

In many of the states it has been held that this can be done,

and that the only matter the courts will inquire into is as to the honesty and good faith of the transaction. In this state, in the case of Ashhurst's App., 60 Pa. 290, it was held that "though the law ordinarily frowns upon contracts made by directors of the corporation with themselves, as private persons, such contracts are not necessarily void; but their fairness must be shown." In that case, Justice STRONG says: "There must be many things which directors can do for their individual benefit, which are binding upon a corporation of which they are directors. If they have advanced money, I cannot doubt they may pay themselves with corporate funds. If they have become liable as sureties for the corporation, they may provide for their indemnity." In the case of Gordon v. Preston, 1 W. 385, one of the questions raised by a creditor of the company was, that the mortgage was illegal because the mortgagees were the president and treasurer of the company, and were present at the meeting of the board when the mortgage was authorized and executed. GIBSON, C. J., said, "that a corporator may sustain the relation of debtor or creditor in regard to the corporation, and in the latter receive a security, is a proposition which requires not the aid of an argument; and here the existence of a meritorious debt is not disputed."

In the present case, the plaintiffs contend that the capital of a corporation is a trust fund, held for the benefit of its creditors, and that an insolvent corporation has no power to prefer certain creditors; that such preference, if made, is a fraud in law, and that the proceeds of an execution levied on personal property of such corporation is to be divided pro rata among all the creditors.

Under certain limitations this contention is correct. In Pennsylvania the capital stock, and all property, real or personal, of a corporation, necessary for the full enjoyment and exercise of its franchises, together with its franchises and all moneys due on unpaid subscriptions to its capital stock, constitute a fund for the payment of all its creditors. Such property and franchises may be sold under a writ of fieri facias, and the proceeds of the sheriff's sale thereof, under the act of April 7, 1870, P. L. 58, are to be distributed amongst all the creditors, as in case of insolvency: Bayard's App., 72 Pa. 453. But not so in regard to property of any kind beyond what is

necessary for the full enjoyment and exercise of such franchises. All such property is liable to lien and execution the same as the property of any other debtor: Plymouth R. Co. v. Colwell, 39 Pa. 337. In the case of Fairmount Coal & Iron Co.'s App., 14 W. N. 214, it was decided by the Supreme Court that "the proceeds arising from a sale, upon execution, of the property of an insolvent corporation, which is not essential to the exercise of its franchises, goes to the execution creditor, and is not to be distributed among any of the other creditors." In that case the auditor found "that the property sold consisted of the products of the company, and the raw materials used in their manufacture, and was, therefore, not necessary to the exercise of its franchise; that the corporation, at the time the judgments were obtained, was insolvent." The Supreme Court said: "It is found as a fact that the property of the corporation, which produced this fund, was not necessary to the exercise of its franchise. It was the articles which it produced to sell and the material out of which they were manufactured." The law as there stated has been repeated through a long line of decisions, ever since the act of 1836, and it is unnecessary to refer to any more of them.

That the defendants in the present case indorsed the notes of the corporation, as set forth in the judgment bonds given as indemnity, that is, to secure them on account of their liability by reason of such indorsement, is not disputed or questioned. There was, therefore, no fraud in fact. This brings us to the most important and material question to be determined in the case. Was there fraud in law? I would have no difficulty in deciding upon this question, were it not for the case of Hopkins's App., 90 Pa. 69. . . . .

—After discussing at length Hopkins's App., 90 Pa. 69, the opinion proceeded:

Now whether the law is as therein stated, doubtless either the plaintiffs or defendants in the present case will require to be determined by the Supreme Court, in the end. This court cannot decide the question in the first instance until there is a final hearing and the facts found. It would seem that the insolvency of the company and the knowledge of the officers at the time they instituted their proceedings, are important matters to be considered in determining the case. These are ques-

Opinion of Court below.

tions that are disputed, and must be disposed of. A preliminary injunction is for the purpose of preserving the subject of the controversy in the condition in which it is when the order is made. It cannot be used to take property from one party and put it into the hands of another. This can be done only by a final decree. . . . .

In the present case, I am of opinion that the bill and affidavits filed by both parties show a state of facts sufficient to raise the question as to whether the judgment bond given, or authorized to be given, by the officers and directors of the corporation, and the entry of judgments and issuing executions thereon were a fraud in law as against the other creditors, under the circumstances.

The debts due the plaintiff are admitted in defendant's affidavit and in my opinion the question above mentioned is the only material one in the case. If said judgments are fraudulent in law, as against the plaintiffs, it is difficult to see what remedy they could have, if it is not by a bill in equity. The courts of Common Pleas by virtue of the equity jurisdiction conferred on them by the act of 1836, have supervision and control of corporations, and by the act of 1840, "in all cases over which courts of chancery entertain jurisdiction on the grounds of fraud, accident, mistake or account." I have come to the conclusion, either to continue the special injunction until final hearing, or modify the decree entered on March 20, 1889, by dissolving the injunction and permitting the sheriff to make a sale of the property, the proceeds of which sale, to be subject to be distributed under the directions of the court. By the latter mode, although, perhaps, irregular, the facts in dispute can be found and perhaps a more speedy determination of the case had than by continuing the injunction or appointing a receiver. The question as to whether the corporation had an existence at the time of the giving of the judgment bonds to the defendants, by reason of the certificate of incorporation not having been recorded in the office for recording of deeds in Union county, can be passed upon hereafter. If both parties can agree within six days from the time of filing this opinion, upon either of the two modes above mentioned, the court will adopt the same, or enter any other decree that may be jointly suggested by them, that will save time and expense.

If they do not agree, within that time, I will be obliged to enter such a decree as in my opinion will put the case in such shape as to enable the court to do justice to both parties at some other stage of the proceedings.

There is nothing in the injunction affidavits to justify the court in continuing the injunction against the Central Manufacturing Company, and as to the executions of that company the special or preliminary injunction is dissolved. The defendants' affidavits state that "the judgment of the Buffalo Milling Company, Limited, complained of by the bill, has been vacated without detriment."

On May 2, 1889, no agreement of the parties having been made known and adopted, the court filed the following:

Since filing my opinion in this case on the 17th of April last, I have come to the conclusion that there is no sufficient evidence before the court to show that in the giving of the judgment bond in favor of Truman H. Purdy, John F. Duncan, Wm. D. Himmelreich, Jonathan Wolfe and Thomas H. Croft, dated January 28, 1888, there was fraud in fact or in law. It does not appear that the corporation was insolvent at that time, or that there was any intention to collude or commit actual fraud; and I am of the opinion that the mere use of the bond after the supposed insolvency was not a fraud in law. The board was composed of twelve directors, and the said bond was given to secure five of them, who had in good faith assisted the corporation in obtaining money to carry on its operations. If the bond had been executed after the corporation became insolvent, and especially if this was known to the officers in whose favor it was executed, it is probable that the case would be within the spirit of the decision of the Supreme Court in the case of Hopkins's Appeal. At present I think it would.

And now, to wit: May 2, 1889, as to the said judgment of Truman H. Purdy, John F. Duncan, Wm. D. Himmelreich, Jonathan Wolfe, and Thomas H. Croft, No. 132 March Term 1889, conditioned for $20,000, the fieri facias issued thereon to No. 1 May Term 1889, the testatum fieri facias, No. 4 May Term 1889, the attachment execution No. 1 May Term 1889, and the alias testatum fieri facias, No. 13 May Term 1889, the said special or preliminary injunction is dissolved. As to the

said judgment in favor of F. C. Harrison, William M. Ginter, William Croft, Weidler Roland, T. H. Croft, J. F. Duncan, and Wm. D. Himmelreich, No. 135 March Term 1889, conditioned for the payment of $12,000, and the fieri facias No. 7 May Term 1889, the rule is made absolute, and the said injunction continued until the further order of the court.

The plaintiffs then took this appeal, assigning as error, the portion of the decree dissolving the injunction as to the judgment of Truman H. Purdy et al., No. 132 of March Term 1889, and the execution issued thereon, and dissolving the injunction as to the Central Manufacturing Co.

*Mr. H. M. Hinckley* (with him *Mr. Frank P. Billmeyer, Mr. Wm. J. Baldy, Mr. James Scarlet, Mr. D. W. Coxe, Mr. John G. Love,* and *Messrs. Beaver, Gephart* and *Dale*), for the appellants.

Counsel cited: Toof v. Martin, 13 Wall. 40; Dutcher v. Wright, 3 Otto 553; Wager v. Hall, 16 Wall. 584; Lee v. Kilburn, 3 Gray 599; Suydam v. Insurance Co., 51 Pa. 398; Sawyer v. Hoag, 17 Wall. 610; Sanger v. Upton, 1 Otto 56; Taylor on Corp. §§ 654–663, 759, 811; 2 Morawetz on Corp., §§ 780, 782, 787; Messersmith v. Savings Bank, 96 Pa. 443; Bell's App., 115 Pa. 88; Lane's App., 105 Pa. 56; Richards v. Insurance Co., 43 N. H. 246; Bradley v. Farwell, 1 Holmes 439; Corbett v. Woodward, 5 Sawy. 403; Hopkins's App., 90 Pa. 69; Hoyle v. Railroad Co., 54 N. Y. 314 (13 Am. Rep. 595).

*Mr. J. Merrill Linn* and *Mr. Charles S. Wolfe* (with them *Mr. Andrew H. Dill, Mr. Erwin M. Beale* and *Mr. Andrew A. Leiser*), for the appellees.

Counsel cited: Catlin v. Eagle Bank, 6 Conn. 233; Sargent v. Webster, 13 Metc. 502; Wilkinson v. Bauerle, 41 N. J. Eq. 635 (5 Cent. R. 122); Vail v. Jameson, 41 N. J. Eq. 648 (4 Cent. R. 823); Dana v. Bank of U. S., 5 W. & S. 223; Burr v. McDonald, 3 Gratt. 215; Maryland v. Bank of Maryland, 6 Gill & J. 205; Ashhurst's App., 60 Pa. 290; Field on Corp., 177; Angell & A. on Corp., § 233; Whitwell v. Warner, 20 Vt. 425; Stratton v. Allen, 1 C. E. Green 229; Twin Lick

Oil Co. v. Marbury, 1 Otto 587; Buell v. Buckingham & Co., 16 Ia. 284 (85 Am. Dec. 516).

PER CURIAM:
The decree is affirmed and the appeal dismissed at the cost of the appellants.